**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 9 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RICHARD C. WHITE,

    Plaintiff-Appellant,

HANS G. PRESSEL; JOSE CRESPIN; KEVIN GETCHELL;
RICHARD SMITH; JAMES D. PETERS; and DONALD
WOLF,

    Plaintiffs,

v.

STATE OF COLORADO; ARISTEDES ZAVARAS; S.
SMITH; M. McKENNA; DR. O. NEUFELD; DR. W.O.
AUTERY, JR.; CANTWELL; DR. J. McGARRY; SANDRA
CALDWELL; LISA CLANCY; WELLINGTON WEBB; MR.
SIMMIONET; F. OLIVA; NANCY RICE; DIANA
HICKMAN; P. SULLIVAN; SEYMORE SUNDELL; BOB
GALLEGER; OFFICER BRAGG; CITY & COUNTY OF
DENVER; ARAPAHOE COUNTY; COLORADO
DEPARTMENT OF CORRECTIONS; DAVE WARREN,
Chairperson, A.C.R.C.; CRISSY CAHILL, Case Manager,
A.C.R.C.; D. MORTIN, Case Manager, C.T.C.F.; PAULINE
COBBLER, Chief R.N.; and GLORIA MASTERSON,
Admin. Head, C.T.C.F.,

    Defendants-Appellees.

No. 97-1011

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 96-K-1443)**

George B. Curtis of Gibson, Dunn & Crutcher, Denver, Colorado, for Plaintiff-Appellant.

Paul Sanzo (Gale A. Norton, Colorado Attorney General; Daniel E. Muse, City Attorney; Stan M. Sharoff, Assistant City Attorney; Kathryn L. Schroeder, Arapahoe County Attorney; and Ronald A. Carl, Assistant County Attorney, with him on the briefs), First Assistant Attorney General, Denver, Colorado, for Defendants-Appellees.

---

Before **BRORBY, McKAY** and **HENRY**, Circuit Judges.

---

**BRORBY**, Circuit Judge.

---

Richard C. White, and six of his fellow state inmates, filed a *pro se* petition for human rights relief in federal district court naming the State of Colorado, the City and County of Denver, Arapahoe County, and numerous individuals as defendants. After granting a series of motions to dismiss on behalf of most of the defendants, the district court dismissed the case against all remaining defendants for want of jurisdiction. Mr. White filed a *pro se* notice of appeal, and a motion to proceed on appeal *in forma pauperis*. *See* 28 U.S.C. § 1915; Fed. R. App. P. 24. Having satisfied itself Mr. White was not in imminent danger of serious physical injury, the district court, in reliance on the so-called "three strikes" provision of the Prison Litigation Reform Act, denied Mr. White's motion to proceed without paying a filing fee. *See* 28 U.S.C. § 1915(g). Again acting *pro se*, Mr. White appealed the denial of his motion to proceed *in forma pauperis*,

alleging he was in imminent danger of serious physical injury, and challenging the constitutionality of the Prison Litigation Reform Act on equal protection grounds. He also appealed the underlying dismissal of his self-styled human rights action. We appointed counsel to address the issues Mr. White raised on appeal. *See* 10th Cir. Rules, Add. II, Plan for Appointment of Counsel in Special Civil Appeals. Counsel was ordered to address specifically the constitutional implications of the "three strikes" provision of the Prison Litigation Reform Act. We have jurisdiction pursuant to 28 U.S.C. § 1291. We deny Mr. White's motion to proceed *in forma pauperis* and dismiss his appeal. In so doing, we reject Mr. White's challenge to the constitutionality of the "three strikes" provision of 28 U.S.C. § 1915(g).

**Background**

On June 13, 1996, Mr. White and six other named inmates of the Colorado Territorial Correctional Facility (collectively, the Petitioners) filed a *pro se* Petition for Human Rights Relief Under United Nations Resolution 1503 (1970) of the United Nations General Assembly, Economic, and Social Counsel [sic], Commission on Human Rights, seeking injunctive and monetary relief from the State of Colorado, the City and County of Denver, Arapahoe County, the Colorado Department of Corrections, eighteen named individuals, and twenty

John and Jane Does.

One of the petitioners, Hans Pressel, also filed a motion to instigate the action *in forma pauperis* pursuant to 28 U.S.C. § 1915. The district court ordered each of the Petitioners to comply with the filing requirements of § 1915 if they wished to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(a) (requiring, *inter alia*, an affidavit detailing prisoner's assets and a certified copy of the prisoner's trust fund account statement). On July 8, 1996, the Petitioners collectively paid the $120 filing fee.

On July 11, 1996, the Petitioners filed an Amended Petition for Human Rights Relief Under United Nations Resolution 1503. The Petitioners claimed the federal district court had jurisdiction by virtue of the United States' status as a signatory to the United Nations International Bill of Rights. The Petitioners collectively alleged it was the policy of the defendants to:

> 1). Deliberately withhold life-sustaining medications and medical treatment allowing a disease or illness which otherwise could be contained or cured to develop and spread until the human victim suffers and dies a horrible death.
>
> 2). Cram citizens into unsanitary living conditions which foster the spread of painful, deadly diseases;
>
> 3). Deliberately house very old and ill individuals on the highest levels of residence buildings causing pain, heart attacks, strokes, and

death.

4).  Force seriously diseased persons to work in the food preparation areas thus fostering the spread of such deadly disease to other human beings.

5).  Inflict physical and mental forms of torture by
      a).  Explicit threats of death.
      b).  Veiled threats of death.
      c).  Refusal to address severe illnesses.
      d).  Arbitrary deprivation(s) of human beings freedom absent any showing of due process.
      e).  Any other means at their disposal.

(Errors and omissions in original.)

The only allegations specifically referring to Mr. White were denominated as "**'Reliable information attesting to gross violations'** of the United Nations **'International Bill of Rights.'**" (Emphasis in original.)  The Petitioners asserted:

Richard C. White, Richard A. Smith, Jose Crespin, Donald Wolf and others have been deprived of life sustaining medication and medical attention/treatment, have been beaten, and/or otherwise tortured and allowed to suffer great pain, so that their health degenerated to a extremely life-threatening degree due to the Respondents *deliberate indifference* and *criminal negligence.*  Their quality of life, by and through these acts, or omission therefore, has been reduced to constant pain and suffering.

(Errors, omissions, and emphasis in original.)

On August 19, 1996, the Petitioners filed a motion for a preliminary

injunction seeking to enjoin the defendants from improperly withholding medical care, harassing the petitioners through pretextual infractions, and engaging in retaliatory transfers to impede the Petitioners' ability to press their suit. The Petitioners' brief in support of the motion for a preliminary injunction included a three-page, handwritten "Declaration" from Mr. White.[1] In his declaration, dated June 2, 1996, Mr. White specifically alleges:

> I was denied life-sustaining medication, *i.e.* "nitrostat" for six hours while suffering severe chest/heart pain while ... at Denver County Jail. At 4:30 AM Sunday morning I was beaten by a Denver County Deputy Sheriff's captain and four of his men.... After release I was provided with no medical care.

He goes on to allege generally that "[t]he [Colorado] Department of Corrections has refused to test, or treat me for life-threatening, and degenerating medical illness." He further alleges "[b]oth state and federal courts *REFUSE* to act on [his habeas corpus] petitions." (Emphasis in original.)

Over the course of the litigation, the district court granted a series of motions to dismiss. On October 17, 1996, the district court granted the motions to dismiss filed by the State of Colorado on behalf of the State and nine individual defendants associated with state correctional facilities and programs,

---

[1] Mr. White's declaration appears to have been intended originally to support the Petitioners' attempt to win class certification.

and by State District Court Judge Nancy Rice. [2] On November 5, 1996, the district court granted the motion to dismiss filed by State District Court Judge Deanna Hickman and Sandra Caldwell, a probation officer. In the same order, the district court granted Arapahoe County's motion to dismiss.

The district court also granted a motion to dismiss filed by defendant City and County of Denver and four individual defendants. [3] In its motion, Denver specifically argued Mr. White's claim was barred by the doctrine of *res judicata*. In support of this argument, Denver appended a magistrate judge's Recommendation filed December 1, 1995, in a federal habeas corpus action Mr. White had instigated. *See White v. Colorado*, Civil Action No. 95-D-1500 (D. Colo. Dec. 1, 1995). The magistrate judge's Recommendation indicates Mr.

---

[2] There is some ambiguity in the district court's order of October 17, 1996. The district court's order referred to "Defendants' Motion to Dismiss filed October 10, 1996." Technically, two motions to dismiss were filed October 10, 1996, Judge Rice's motion and the motion on behalf of the State of Colorado, *et al.* We read the district court's order as granting both those motions. The record clearly indicates the Petitioners also interpreted the district court's order as applying to Judge Rice's motion. In both their responses to the motions to dismiss, the Petitioners name Judge Rice among the other individual defendants, and specifically address the arguments contained in her motion to dismiss.

[3] The individually named defendants were Wellington E. Webb (Mayor, Denver); John Simonet (Undersheriff, Denver); Fred Oliva (Chief Operating Officer, Denver County Jail) and Dr. Seymour Sundell (Physician, Denver General Hospital's Inmate Ward).

White filed a habeas corpus action alleging "that he suffers from a variety of serious medical problems and that he has not been properly treated for these complaints." The magistrate judge described Mr. White's pleading as "a laundry list of medical complaints." The magistrate judge determined Mr. White filed one to three complaints *a day* regarding medical problems, and had been "seen by medical personnel approximately 110 times between February 7, 1994 and August 15, 1995 for a multitude of complaints," notwithstanding the fact Mr. White was "hostile, disruptive and uncooperative toward medical personnel." The magistrate judge also noted Mr. White "has been diagnosed with somatoform pain disorder, a psychological problem which may cause him to exaggerate his pain." The magistrate judge concluded Mr. White had "failed to show an Eighth Amendment violation, [and] his claims should be dismissed regardless of whether his pleading is construed as a habeas corpus petition or a civil rights complaint." [4]

During the pendency of this action, the Petitioners filed various motions and an objection in response to defendants' motions to dismiss. On October 24, 1996, the Petitioners filed a response to the motions to dismiss filed by Judge

---

[4] Subsequently, the district court granted summary judgment to the defendant State of Colorado on Mr. White's petition for writ of habeas corpus, and another panel of this court affirmed that decision. *White v. Colorado*, 1998 WL 339655 (10th Cir. Jun. 23, 1998) (unpublished disposition).

Rice and the State of Colorado *et al.* On October 28, 1996, the Petitioners filed an objection to dismissal without time to reply. On October 28, 1996, the Petitioners filed a second response to defendants' motions to dismiss, which appears to be identical to their earlier response in all material respects.

On November 5, 1996, the district court entered an order of dismissal. In that order, the district court struck both of the Petitioners' responses to the motion to dismiss as moot. The Petitioners' objection to dismissal without proper time to reply was overruled. As discussed earlier, the district court used this order to grant the motions to dismiss filed by Judge Hickman, Ms. Caldwell, and Arapahoe County. Finally, the district court disposed of the claims against the remaining defendants for want of jurisdiction "to adjudicate claims arising under the United Nations' resolution and covenants cited in the complaint/amended petition."

On November 29, 1996, Mr. White alone filed a notice of appeal. On December 9, 1996, Mr. White filed a motion to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 and Federal Rule of Appellate Procedure 24. Mr. White described the issues he wished to raise on appeal as follows:

> Jurisdictional issues. The District Court does have jurisdiction in the matter before the court in this action. The District Court Judge unlawfully struck the Petitioner's "Reply Briefs," and dismissed the case.

-9-

He made no allegations as to his personal well-being.

On December 20, 1996, the district court denied Mr. White's motion for leave to proceed on appeal *in forma pauperis*. In denying Mr. White's motion, the district court specifically invoked § 1915(g) of the *in forma pauperis* statute.[5] *See* 28 U.S.C. § 1915(g). Noting "Mr. White d[id] not allege in [his] motion and affidavit that he is under imminent danger of serious physical injury," the district court then determined three of Mr. White's previous *pro se* civil actions had been dismissed for failure to state a claim. Accordingly, the district court denied Mr. White's motion to proceed on appeal without prepayment of fees.

On December 30, 1996, Mr. White filed a motion for review from the judgment and order denying his motion to proceed under 28 U.S.C. § 1915. For

---

[5] Section 1915(g), the so-called "three strikes" provision of the *in forma pauperis* statute, provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

the first time, Mr. White " *'declares under penalty of perjury under the laws of the United States that he is "under imminent danger of serious physical injury".'"* (Emphasis in original.) He specifically urged the district court to review "Case Number 95-D-1500," the case discussed in the magistrate judge's Recommendation contained in Denver's motion to dismiss, before ruling on his motion. In his motion, Mr. White also for the first time alleged the Prison Litigation Reform Act violated the equal protection clause of the Fourteenth Amendment. *See* U.S. Const. amend. XIV, § 1. The district court denied Mr. White's motion.

On January 7, 1997, Mr. White filed a notice of appeal with a motion to proceed *in forma pauperis* with this court. In his notice, Mr. White again asserted he came under the imminent danger of serious physical injury exception to 28 U.S.C. § 1915(g). He again challenged the constitutionality of the Prison Litigation Reform Act on equal protection grounds. On September 12, 1997, this court appointed counsel to address the issues raised by Mr. White's appeal. Counsel specifically was ordered to "address the [Prison Litigation Reform Act's] 'three strikes' provision and the constitutional implications of denying litigants access to the courts if they have a history of frivolous filings."

-11-

Mr. White, through counsel, raises three issues. First, Mr. White alleges the district court erred in dismissing his case for lack of jurisdiction because the district court should have construed his pleading as a civil rights claim arising under 42 U.S.C. § 1983. Second, he contends the district court erred in denying his motion for leave to proceed *in forma pauperis* because the "three strikes" provision contained in 28 U.S.C. § 1915(g) is unconstitutional. Finally, Mr. White alleges he is in imminent danger of serious physical injury and, therefore, qualifies for the exception to 28 U.S.C. § 1915(g). We first address the question of whether Mr. White is in imminent danger of serious physical injury. If we determine Mr. White falls under the exception to § 1915(g), we need not reach his constitutional challenge to the "three strikes" provision. If we reach the constitutional question and determine § 1915(g) is constitutional, we need not address the merits of his underlying case.

*Imminent Danger of Serious Physical Injury*

Section 1915(g) precludes *in forma pauperis* status for indigent inmates seeking to proceed in a civil action if, on three prior occasions, the litigant has had a case dismissed as frivolous, malicious, or for failure to state a claim on

which relief may be granted. [6] 28 U.S.C. § 1915(g). There is an exception if the inmate litigant "is under imminent danger of serious physical injury." *Id*. In denying Mr. White's motion to proceed on appeal *in forma pauperis*, the district court specifically found "Mr. White d[id] not allege ... that he is under imminent danger of serious physical injury." Mr. White contends "[t]his ruling is inconsistent with [his] pleadings and flies in the face of the facts."

Mr. White admits he did not raise the issue of imminent danger in his motion to proceed under 28 U.S.C. § 1915. He contends, however, "[o]ne need only glance at [his] allegations [in the Amended Petition] in order to decide that, if proven, they constitute an imminent threat to his physical well-being," specifically pointing to the "allegations of deprivation of necessary medical treatment." He further argues that denying him "the protection of the 'imminent danger' exception to § 1915(g) simply because he failed to reallege the basis for qualifying for the exception would be not only draconian, but would also violate the liberal interpretation that *pro se* pleadings impose upon the court."

We begin by noting the district court also rejected Mr. White's motion for

---

[6] Mr. White does not challenge the district court's finding that he has "three strikes," *i.e.*, three actions dismissed for failure to state a claim.

review from judgment and order denying leave to proceed *in forma pauperis*, wherein Mr. White did allege he was in imminent danger of serious physical harm. In that motion, Mr. White specifically directed the district court's attention to his Amended Petition and the case in which he was pressing his habeas claim.

The Petitioners' Amended Petition is largely a collection of vague and utterly conclusory assertions. Mr. White does not have standing to assert the alleged injuries of the six inmates who did not appeal from the district court's dismissal of their collective action. *See Swoboda v. Dubach*, 992 F.2d 286, 290 (10th Cir. 1993). Therefore, we must assume Mr. White is relying on the following assertion contained in the Amended Petition:

> Richard C. White ... ha[s] been deprived of life sustaining medication and medical attention/treatment, ha[s] been beaten, and/or otherwise tortured and allowed to suffer great pain, so that [his] health degenerated to a[n] extremely life-threatening degree ....

On its face, Mr. White's allegation contains no specific reference as to which of the defendants may have denied him what medication or treatment for what ailment on what occasion. Neither the Amended Petition nor Mr. White's subsequent filings ever specifies even the general nature of the "serious physical injury" he asserts is imminent. [7]

_____

[7] Even if this court were to consider the allegations contained in Mr. White's Declaration, appended to the Petitioners' motion for a preliminary

As for Mr. White's habeas action, the district court had before it the magistrate judge's Recommendation, appended to Denver's motion to dismiss, indicating Mr. White had, in fact, been seen by medical personnel on more than one hundred occasions over the course of twenty months for a veritable panoply of ailments. The magistrate judge's Recommendation further indicated Mr. White was diagnosed as suffering somatoform pain disorder. We also now notice that another panel of this court recently determined:

> [Mr. White] has been seen in the prison infirmary a very considerable number of times over a three-year period for [a broad range of physical] complaints.... [He] has failed to show that [state authorities] have been deliberately indifferent to his serious medical needs.

*White v. Colorado*, 1998 WL 339655 at *1 (10th Cir. Jun. 23, 1998) (unpublished disposition); *see St. Louis Baptist Temple, Inc. v. Federal Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (noting that a federal court may take notice of proceedings in other federal courts when those proceedings are relevant to matters at issue). Like the district court, we conclude Mr. White has failed to raise a credible allegation that he is in imminent danger of serious physical harm, and, therefore, he does not come under the exception to § 1915(g). *Cf. Gibbs v.*

---

injunction, his claim would still fail because those appear to be the same allegations raised and dismissed in Mr. White's petition for writ of habeas corpus. *See White*, 1998 WL 339655.

*Roman*, 116 F.3d 83 (3rd Cir. 1997) (granting evidentiary hearing on question of "imminent physical danger" under § 1915(g) where prisoner made credible, uncontroverted allegations of physical threats and attacks).  Because Mr. White does not fall under the imminent danger of serious physical harm exception, we reach his constitutional challenge to the "three strikes" provision of the Prison Litigation Reform Act.  *See* 28 U.S.C. 1915(g).

*Constitutionality of 28 U.S.C. § 1915(g)*

Mr. White contends the district court's denial of his motion for leave to proceed *in forma pauperis* was erroneous because 28 U.S.C. § 1915(g), the basis of the district court's decision, is unconstitutional.  Mr. White argues that because § 1915(g) substantially burdens indigent prisoners' right of access to the courts to litigate claims, it violates both the Due Process Clause and the Equal Protection Clause.  *See* U.S. Const. amend. V, amend. XIV.  These are questions of law we review *de novo*.  *Stephens v. Thomas*, 19 F.3d 498, 500 (10th Cir.), *cert. denied*, 513 U.S. 1002 (1994).

At issue here is § 1915(g), the "three strikes" provision of the *in forma pauperis* statute as amended by the Prison Litigation Reform Act.  28 U.S.C. § 1915(g), as amended by the Prison Litigation Reform Act of 1995, Pub. L. No.

-16-

104-134, §§ 804-810, 110 Stat. 1321 (Apr. 26, 1996). This provision requires so-called "frequent filer" prisoners to prepay the entire filing fee before federal courts may consider their civil actions and appeals. *See Lyon v. Krol*, 127 F.3d 763, 764 (8th Cir. 1997). The only exception contained in § 1915(g) is the "imminent danger of serious physical injury" provision discussed *supra*. 28 U.S.C. § 1915(g).

Mr. White contends that if he, an indigent inmate, is denied leave to proceed *in forma pauperis* pursuant to § 1915(g), he will be denied access to the courts available to similarly situated non-indigent inmates. He asserts that because he is raising a claim arising under the Eighth Amendment, his right of access to the courts is "fundamental." Thus, he claims, the strict scrutiny standard applies, and § 1915(g) fails constitutional review under both equal protection and due process principles because it is not narrowly tailored.

Several of our sister circuits already have rejected constitutional challenges to 28 U.S.C. § 1915(g). *See Wilson v. Yaklich*, 148 F.3d 596 (6th Cir. 1998) (rejecting equal protection, right of access, substantive due process, bill of attainder, and ex post facto challenges); *Rivera v. Allin*, 144 F.3d 719 (11th Cir. 1998) (rejecting right of access, separation of powers, due process, and equal

protection challenges), *cert. dism'd* 1998 WL 480078 (S. Ct. Sep. 17, 1998) (No. 98-5572); *Carson v. Johnson*, 112 F.3d 818 (5th Cir.) (rejecting right of access, due process and equal protection challenges), *cert. denied*, 117 S. Ct. 1711 (1997). We now join those courts, and reject Mr. White's constitutional challenges to § 1915(g).

The right of access to which Mr. White refers flows from the First Amendment, which provides that "Congress shall make no law ... abridging ... the right of the people ... to petition the Government for a redress of grievances." U.S. Const. amend. I. However, the Supreme Court has never held the Due Process Clause of the Fourteenth Amendment requires that all individuals be guaranteed a right of access to the courts in all circumstances. *United States v. Kras*, 409 U.S. 434, 450 (1973). The Supreme Court has "stopped short of an unlimited rule that an indigent at all times and in all cases has the right to relief without the payment of fees." *Id*. Accordingly, "Congress is no more compelled to guarantee free access to federal courts than it is to provide unlimited access to them." *Roller v. Gunn*, 107 F.3d 227, 231 (4th Cir.), *cert. denied*, 118 S. Ct. 192 (1997). [8] By its terms, § 1915(g) "does not prevent a prisoner with three strikes

---

[8] In *Roller,* the Fourth Circuit rejected a prisoner's claim that the filing fee and cost provisions of the Prison Litigation Reform Act, 28 U.S.C. §§ 1915(b)(1), (b)(2) and (b)(4) violated his constitutional right of access to the courts. *Roller*,

from filing civil actions; it merely prohibits him from enjoying [ *in forma pauperis* ] status." *Carson*, 112 F.3d at 821. As the Eleventh Circuit observed, "proceeding [ *in forma pauperis* ] in a civil case is a privilege, not a right – fundamental or otherwise." *Rivera*, 144 F.3d at 724.

Mr. White concedes that "access to the courts is not an unlimited fundamental right." However, Mr. White contends that because his underlying case "asserts a civil rights claim that he has been subjected to cruel and unusual punishment in violation of the Eighth Amendment," his right of access is "fundamental" under *Bounds v. Smith*, 430 U.S. 817 (1977) and its progeny. [9] *See also M.L.B. v. S.L.J.*, 519 U.S. 102, ___, 117 S. Ct. 555, 562-64 (1996) (indicating fee waivers are required in "a narrow category of civil cases" where the litigant has a "fundamental interest" at stake).

---

107 F.3d at 231-33. Section 1915(g) was not specifically challenged in *Roller*.

[9] In *Bounds*, actions were brought by state inmates alleging the State of North Carolina's failure to provide them with adequate legal library facilities denied them reasonable access to the courts and equal protection as guaranteed by the First and Fourteenth Amendments. *Bounds*, 430 U.S. at 817-821. The Supreme Court held "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id*. at 828.

While most of "the access-to-courts cases in the *Bounds* line involved attempts by inmates to pursue direct appeals," *Lewis v. Casey*, 518 U.S. 343, 354 (1996) (citing multiple cases), the Supreme Court did expand the reach of *Bounds* to civil rights claims arising under 42 U.S.C. § 1983 that seek to vindicate "basic constitutional rights." *Id.*, 518 U.S. at 354 (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)). In *Lewis*, however, the Supreme Court made it plain that a *Bounds* violation requires more than the bald assertion of a violation of a basic constitutional right under 42 U.S.C. § 1983; "an inmate alleging a violation of *Bounds* must show actual injury." *Id.* at 348-49, 351-52.

Mr. White asserts his "fundamental" right to access flows from a violation of the Eighth Amendment prohibition against "cruel and unusual punishments." U.S. Const. amend. VIII. "In order to state a cognizable claim [under the Eighth Amendment], a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

As we noted earlier, another panel of this court, after thoroughly reviewing Mr. White's medical records, concluded he "failed to show that [state authorities]

-20-

have been deliberately indifferent to his serious medical needs." *White*, 1998 WL 339655 at \*1. Nothing in the record in this case indicates Mr. White has had less access to medical care since that determination or that the quality of his care has deteriorated. Simply put, Mr. White has failed to state an injury as required under the *Bounds* line of cases.[10] Moreover, if Mr. White could demonstrate he was, in fact, in danger of grave harm, he would qualify under the imminent danger of serious physical injury exception of § 1915(g). Accordingly, we find no violation of Mr. White's First Amendment right to access the courts; he simply must prepay the filing fee like most other litigants. *Accord Wilson*, 148 F.3d at 605 (rejecting right of access claim arising from the assertion of an Eighth Amendment claim); *Rivera*, 144 F.3d at 724 (same); *Carson*, 112 F.3d at 821 (rejecting right of access challenge to § 1915(g) arising from the assertion of double jeopardy and *ex post facto* claims).

Mr. White also claims § 1915(g) violates the Equal Protection Clause of the Fourteenth Amendment as guaranteed by the Due Process Clause of the Fifth Amendment. Moreover, he argues that "[b]ecause § 1915(g) substantially burdens

---

[10] The Eleventh Circuit rejected a similar right of access claim relying on the *M.L.B.* line of cases in *Rivera*. *See Rivera*, 144 F.3d at 724. In *Rivera*, the prisoner was also trying to assert an Eighth Amendment claim in the context of a 42 U.S.C. § 1983 action. *Id.*

[his] fundamental right of access to the courts, to be constitutional it must satisfy th[e] strict scrutiny standard."

Unless a legislative classification either burdens a fundamental right or targets a suspect class, it need only bear a "rational relation to some legitimate end" to comport with the Equal Protection Clause of the Fourteenth Amendment, as incorporated through the Due Process Clause of the Fifth Amendment. *Romer v. Evans*, 517 U.S. 620, 631 (1996). Because we have rejected Mr. White's assertion that he has a fundamental interest at stake, and he does not claim to be a member of a suspect class, we must reject his invitation to review § 1915(g) under the strict scrutiny standard. *See Carson*, 112 F.3d at 821-22 ("Neither prisoners nor indigents constitute a suspect class.").

The Fifth Circuit observed, "[i]t can hardly be doubted that deterring frivolous and malicious lawsuits, and thereby preserving scarce judicial resources, is a legitimate state interest." *Id*. at 822. "Unquestionably, the ends that Congress enacted section 1915(g) to achieve – the curtailment of abusive prisoner tort, civil rights and conditions litigation and preserving scarce judicial resources – are legitimate." *Rivera*, 144 F.3d at 727 (internal quotation marks and citation omitted); *see also Wilson*, 148 F.3d at 604 (noting Congress' legitimate interest in

deterring frivolous prisoner litigation).

Section 1915(g) is rationally related to the legitimate end of deterring frivolous and malicious prisoner lawsuits. We already have joined with many of our sister circuits in holding that the general fee provisions of the Prison Litigation Reform Act, requiring prisoner indigents to prepay a partial filing fee, are rationally related to the legitimate goal of deterring abuse of the federal judicial system. *See Shabazz v. Parsons*, 127 F.3d 1246, 1248-49 (10th Cir. 1997); *accord Mitchell v. Farcass*, 112 F.3d 1483, 1487-89 (11th Cir. 1997); *Roller*, 107 F.3d at 231-34; *Hampton v. Hobbs*, 106 F.3d 1281, 1286-87 (6th Cir. 1997). We now conclude "[i]t is equally rational for Congress to separate frequent filer prisoner indigents from prisoner indigents who file less frequently and disqualify the former class from the luxury of having to advance only a partial amount (or, if the prisoner is destitute, no amount) of the filing fee." *Rivera*, 144 F.3d at 728. As the Fifth Circuit concluded, "[i]t is ... undebatable that prohibiting litigants with a history of frivolous or malicious lawsuits from proceeding [ *in forma pauperis* ] will deter such abuses." *Carson*, 112 F.3d at 822.

Accordingly, we now join the Eleventh, Sixth, and Fifth Circuits in concluding that § 1915(g) does not violate the guarantees of equal protection and

due process. *See Wilson*, 148 F.3d at 604-05; *Rivera*, 144 F.3d at 727-28; *Carson*, 112 F.3d at 821-22.

We reject Mr. White's constitutional challenge to § 1915(g) of the *in forma pauperis* statute. *See* 28 U.S.C. § 1915(g). Mr. White fails to persuade us the "three strikes" provision denies him "adequate, effective, and meaningful" access to the federal courts. *Bounds*, 430 U.S. at 822. He simply has to prepay the $105 filing fee to pursue his appeal. Nor are we convinced § 1915(g) impermissibly intrudes upon his equal protection or due process rights to pursue his lawsuit. Furthermore, Mr. White fails to make a credible allegation that he is in imminent danger of serious physical harm; thus, we find no reason not to apply § 1915(g).

Accordingly, the judgment of the district court in denying Mr. White's motion to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 is **AFFIRMED**. Mr. White's motion for leave to proceed *in forma pauperis* in this court is **DENIED**. His appeal on the merits is **DISMISSED**.