**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 28, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BRIAN L. BROWN, SR.,

     Plaintiff-Appellant,

v.

LEAVENWORTH COUNTY,
KANSAS, DARLA FARNSWORTH,
JOHN DOE,

     Defendants-Appellees.

No. 08-3276
(D.C. No. 5:08-CV-03175-SAC)
(D. Kan.)

---

### ORDER AND JUDGMENT[*]

---

Before **HARTZ**, **EBEL**, and **O'BRIEN**, Circuit Judges.

Plaintiff-Appellant Brian L. Brown, Sr., a federal prisoner proceeding pro se, appeals the district court's dismissal of his section 1983 claims for interference with his access to court. Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM the dismissal of his claims.

---

[*]After examining appellant's brief and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. Background

Mr. Brown is incarcerated at Federal Correctional Institute Tucson in Arizona. On July 14, 2008, Mr. Brown filed a complaint against Leavenworth County, Kansas, the Leavenworth District Court Clerk, Darla Farnsworth, and the Leavenworth County Sheriff, alleging his constitutional rights to due process and equal protection were denied when a breach of contract action he filed in Leavenworth District Court was dismissed for failure to prosecute because he was not able to afford the $5.00 fee for service of process of the complaint.[1]

On August 26, 2008, the district court granted him leave to proceed in forma pauperis. In that same order, the court undertook its duty preliminarily to screen Brown's complaint pursuant to 28 U.S.C. § 1915A(a), and it dismissed Brown's complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915A(b)(1). Brown appeals that decision.

---

[1] We note that Kansas provides alternative ways to serve process which do not require expenditure of a payment to effect the service of process. See Kan. Stat. Ann. § 60-303. However, Mr. Brown alleges that because of his incarceration he could not utilize any of these methods and the only method available to him was by payment of $5.00 to have the sheriff effect service of process of his complaint. For purposes of this appeal, we accept Mr. Brown's assertion that, for a federal prisoner, the only available method of service of process required payment of a fee.

## II. Appellate Jurisdiction

At the outset, we must determine whether we have jurisdiction to consider this appeal. "[T]he timely filing of a notice of appeal in a civil case is a jurisdictional requirement," and in the absence of a timely notice of appeal, a case "must be dismissed for want of jurisdiction." Bowles v. Russell, 551 U.S. 205, 127 S. Ct. 2360, 2366 (2007) (quotation marks and citation omitted).

Attached to his notice of appeal, Brown filed a certificate of service asserting that, within the time for filing a notice of appeal, he deposited, with a staff member of the prison, his notice of appeal to be placed in the prison's special legal mail box.[2] Brown's notice of appeal, however, was not filed with the district court until eleven days after the deadline for filing such notice. Therefore, we have subject-matter jurisdiction only if Mr. Brown's notice of appeal is entitled to the benefit of the so-called "prisoner mail-box rule," Fed. R. App. P. 4(c)(1), so that his notice of appeal was considered timely filed when it was delivered to prison authorities for forwarding to the district court.[3]

---

[2] The accompanying, signed, certificate of service attested that the "'Notice of Appeal', was placed in the United States Postal Service, postage prepaid, by first placeing [sic] the mail in the hands of Counselor, a Staff member of the Prison, to place in the Prison's Special Legal Mail Box, pursuant to Houston V. Lack 48[7] US 266 (1988) to the following on the 21dst [sic] date of September, 2008." (ROA vol. 1, dist. ct. doc. 10.)

[3] The Federal Rules of Appellate Procedure Rule 4(c)(1) provides:

If an inmate confined in an institution files a notice of appeal in

(continued...)

This Court has interpreted Rule 4(c)(1) to require different methods of proof of compliance with the prison mail box rule depending on whether or not an inmate had access to a legal mail system. "If a prison lacks a legal mail system, a prisoner must submit a declaration or notarized statement setting forth the notice's date of deposit with prison officials and attest that first-class postage was prepaid." United States v. Ceballos-Martinez, 387 F.3d 1140, 1145 (10th Cir. 2004).

Here, however, Brown asserts in his certificate of service accompanying the notice of appeal that he used a legal mail system. In Ceballos-Martinez, this Court interpreted Rule 4(c)(1) as only requiring a declaration in compliance with 28 U.S.C. § 1746, or a notarized statement. where a legal mail system is not available. 387 F.3d at 1144 (Rule 4(c)(1) "provides that a prisoner 'may' file an appropriate declaration or notarized statement with his notice of appeal in lieu of documenting the time of deposit by way of the legal mail system."). Subsequent cases have followed Ceballos-Martinez's suggestion that the requirement of a

[3](...continued)
either a civil or a criminal case, the notice is timely if it is deposited in the institution's internal mail system on or before the last day for filing. If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

declaration or notarized statement is inapplicable when a prisoner used a legal mail system. See Price v. Philpot, 420 F.3d 1158, 1166 (10th Cir. 2005) ("To summarize, an inmate must establish timely filing under the mailbox rule by either (1) alleging and proving that he or she made timely use of the prison's legal mail system if a satisfactory system is available, or (2) if a legal system is not available, then by timely use of the prison's regular mail system in combination with a notarized statement or a declaration under penalty of perjury of the date on which the documents were given to prison authorities and attesting that postage was prepaid."); Larson v. Meek, 240 Fed. App'x 777, 780 (10th Cir. June 14, 2007) (unpublished) (declaration or notarized statement not required because appellant alleged that he used the legal mail system and filed a copy of the prison's legal mail log with the court); United States v. Lee, 196 Fed. App'x 719, 722 (10th Cir. Oct. 19, 2006) (unpublished) (declaration or notarized statement not required because appellant alleged that he used the legal mail system and filed a copy of the prison's legal stamp on envelope with the court).

Although the record on appeal does not include any independent verification of the date of deposit of the notice of appeal in the legal mail system, by alleging in his signed certification accompanying the notice of appeal that he used the legal mail system and that postage was prepaid, Mr. Brown has satisfied his obligation to prove timely use of the prison legal mail system and can invoke the prison mail-box rule.

Therefore, we have appellate jurisdiction to consider Mr. Brown's appeal.

## III. Standard of Review

We review de novo the district court's dismissal of a prisoner's complaint under 28 U.S.C. § 1915A(b)(1) for failure to state a claim.  See Young v. Davis, 554 F.3d 1254, 1256 (10th Cir. 2009).  As with a motion to dismiss under Fed. R. Civ. P. 12(b)(6), we accept Mr. Brown's allegations as true and construe them, and any reasonable inferences to be drawn from them, in the light most favorable to Mr. Brown.  See Kay v. Bemis, 500 F.3d 1214, 1217 (10th Cir. 2007).  Since Mr. Brown is proceeding pro se, his complaint must be construed liberally.  See id. at 1218.   "We review the complaint for plausibility; that is, to determine whether the complaint includes enough facts to state a claim to relief that is plausible on its face."  Young, 554 F.3d at 1256 (quotations and citation omitted).

## IV. Discussion

The Supreme Court has "recognized a narrow category of civil cases in which the State must provide access to its judicial processes without regard to a party's ability to pay court fees."  M.L.B. v. S.L.J., 519 U.S. 102, 113 (1996).  In Boddie v. Connecticut, 401 U.S. 371 (1971), the Supreme Court held that indigent individuals could not be denied access to the courts for filing a divorce petition because of their inability to pay the filing fee.  Crucial to the Supreme Court's

decision was the fundamental interest at stake. "[G]iven the basic position of the marriage relationship in this society's hierarchy of values and the concomitant state monopolization of the means for legally dissolving this relationship," due process prohibited the government from denying access to its courts. Id. at 374.

Soon after Boddie, the Supreme Court clarified that a constitutional requirement to waive court fees in civil cases is the exception, not the general rule. In United States v. Kras, 409 U.S. 434 (1973), the Supreme Court held that the government could require indigents seeking to file for bankruptcy to pay a filing fee. The Court distinguished Boddie on two grounds. First, divorces relate to the constitutional right to marry, which is of fundamental importance under the Constitution. Kras's alleged interest in the elimination of his debt burden, and in obtaining his desired new start in life, although important and so recognized by enactment of the Bankruptcy Act, did not rise to the same constitutional level. Id. at 444-45. Second, the Court explained that access to court is the exclusive path to be granted a divorce. In contrast, there are alternative ways for a person to solve the problems of debts; for instance, "a debtor . . . may adjust his debts by negotiated agreement with his creditors." Id. at 445.

In Ortwein v. Schwab, 410 U.S. 656 (1973), the Supreme Court followed the reasoning in Kras and held that a state court may require indigent welfare recipients to pay a filing fee to obtain access to the courts for judicial review of adverse welfare decisions. As in Kras, the Court distinguished Boddie because

the increase in welfare payments that plaintiffs sought "was of far less constitutional significance than the interest of the <u>Boddie</u> appellants" and did not implicate fundamental constitutional rights. <u>Id.</u> at 659. Because neither a fundamental interest nor a suspect classification was implicated by the filing fee, equal protection only required a rational justification, a requirement which was easily satisfied by the court system's need for cost recoupment. <u>Id.</u> at 660.

The Supreme Court's most recent decision in this area of the law, although requiring a fee waiver, affirmed that fee waivers are not required in the mine-run of civil cases. In <u>M.L.B.</u>, 519 U.S. 102, the Court declared unconstitutional a state requirement that parents pay a fee for preparation of the trial record in order to appeal a decision terminating custody. The Court noted that generally access fees only have to meet rational basis review, and "[t]he State's need for revenue to offset costs, in the mine run of cases, satisfies the rationality requirements; States are not forced by the Constitution to adjust all tolls to account for disparity in material circumstances." <u>Id.</u> at 123-24 (internal quotation and citations omitted). But there is an exception in that "[t]he basic right to participate in political processes as voters and candidates cannot be limited to those who can pay for a license[, n]or may access to judicial processes in cases criminal or 'quasi criminal in nature,' turn on ability to pay." <u>Id.</u> at 124 (citation omitted). The Court explained that proceedings to permanently terminate parental custody fit into the latter category and "work a unique kind of deprivation," <u>id.</u> at 127

(quotation omitted), because "termination adjudications involve the awesome authority of the State to destroy permanently all legal recognition of the parental relationship." Id. at 128 (quotation omitted). Thus, the Court placed these proceedings within the category of cases in which the State may not "bolt the door to equal justice." Id. at 124 (quotation omitted).

The Tenth Circuit has taken a similarly restrictive view of when the government is required to provide fee waivers.[4] In Otasco v. United States (In re South), 689 F.2d 162 (10th Cir. 1982), this Court upheld a $60 filing fee imposed on creditors who initiated adversary bankruptcy proceedings. We explained that "Otasco [was] seeking to preserve its contractual rights of immediate possession, immediate payment in full, and personal recourse against the debtor. None of these rights touch on fundamental interests. Otasco's contractual rights—economic interests—have 'far less constitutional significance than the interest of the Boddie appellants.'" Id. at 165 (quoting Ortwein, 410 U.S. at 659). On the other hand, the government had multiple interests in imposing the fee requirement: first, cost recoupment for operating the bankruptcy system; and, second, "the fee ensures, to some minimal degree, that creditors are genuinely contesting discharge rather than seeking to harass the debtor." Id. at 165-66.

---

[4] But see Rankin v. Indep. Sch. Dist. No. I-3, Noble County, Okla., 876 F.2d 838 (10th Cir. 1989) (declaring unconstitutional a state statute requiring tenured teachers to pay half the costs of a hearing concerning non-renewal of their contracts). This Court's decision in Rankin is uncertain after M.L.B.

This Court also buttressed its conclusion that the fee is not an undue burden by noting that "were Otasco to seek enforcement of its contract rights in state court, it would be required to pay a filing fee. No one could reasonably contend that the state fee is unconstitutionally burdensome." Id. at 166.

Most recently in White v. State of Colorado, 157 F.3d 1226 (10th Cir. 1998), this Court upheld the constitutionality of the "three strikes" provision of the Prison Litigation Reform Act, which requires so-called "frequent filer" prisoners to repay the entire filing fee before federal courts may consider their civil actions and appeals.[5] Mr. White contended that because he was raising a claim under the Eighth Amendment for denial of adequate medical care, his right of access to the courts was "fundamental" and subject to strict scrutiny. Id. at 1232. After concluding that he was not in imminent danger of serious physical injury, this Court rejected his claim of an access-to-court violation because he did not have a fundamental interest at stake. Id. at 1233-34. Likewise, this Court rejected his Equal Protection Clause argument, because Mr. White's complaint did not adequately assert a fundamental interest at stake, and therefore did not warrant strict scrutiny review. Id. at 1234. Accordingly, this Court explained that the general fee provisions of the Prison Litigation Reform Act are rationally related to the legitimate goal of deterring abuse of the federal judicial system, and

---

[5] The only exception to the three strikes provision is if the "prisoner is under imminent danger of serious physical injury." See 28 U.S.C. § 1915(g).

upheld the constitutionality of the in forma pauperis statute.  Id.  In so doing, this Court pointed out that "proceeding in forma pauperis in a civil case is a privilege, not a right—fundamental or otherwise," id. at 1233, and that "deterring frivolous and malicious lawsuits, and thereby preserving scarce judicial resources, is a legitimate state interest."  Id. (quotation omitted).

Here, Mr. Brown alleges that the state of Kansas's requirement of a $5.00 fee in order for the sheriff to effect service of process of a breach of contract claim unconstitutionally burdened his access to court under the Due Process and Equal Protection Clauses of the Fourteenth Amendment.  As we noted, the Supreme Court explained in M.L.B., 519 U.S. at 123, that generally access fees to court only have to meet rational basis review, and "[t]he State's need for revenue to offset costs, in the mine run of cases, satisfies the rationality requirements." A breach of contract claim does not impact fundamental associational rights like the right to marry or parental rights, such as those in Boddie and M.L.B., which are "more substantial than mere loss of money."  M.L.B., 519 U.S. at 121 (quotation omitted).  In contrast, Mr. Brown's interest in his contract claim involves economic interests which are of "far less constitutional significance." Otasco, 689 F.2d at 165.  Therefore, Kansas's need for cost recoupment of the expense of effecting service of process does not create an undue burden on Mr. Brown's access to court.

We do acknowledge that because the law generally does not allow an individual self-help remedies to enforce a contractual right, if an individual cannot negotiate a resolution to a contract dispute, an individual's only recourse is to go to court and request relief. However, the courts' monopoly of authority over a given action is not sufficient to require waiver of an access fee, when a fundamental right is not at stake. Ortwein, 410 U.S. 656. As the Supreme Court has noted on more than one occasion, "States are not forced by the Constitution to adjust all tolls to account for disparity in material circumstances." M.L.B., 519 U.S. at 123-24 (internal quotation and citation omitted).

## V. Conclusion

The judgment of the district court is AFFIRMED. Mr. Brown's motion to proceed in forma pauperis is GRANTED. Mr. Brown is reminded that he must continue making partial payments until the filing fee is paid in full.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge