**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 8, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MIKEAL GLENN STINE,

  Plaintiff-Appellant,

v.

U.S. FEDERAL BUREAU OF
PRISONS; DR. CHRISTOPHER
WILSON, ADX; DR. DAVID
ALLRED, Clinical Director; BLAKE
DAVIS, Warden, ADX; MR.
MUNSON, Associate Warden, ADX;
A. OSAGIE, Physician Assitant, ADX;
MR. SMITH, Assistant,
Administrative Health Services; JOHN
DOE, Unknown Defendants,

  Defendants - Appellees.

No. 11-1504
(No. 1:11-CV-02665-LTB)
(D. Colo.)

---

**ORDER AND JUDGMENT**[1]

---

Before **KELLY**, **HARTZ**, and **HOLMES**, Circuit Judges.

---

  [1]  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

  After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this matter. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff-Appellant Mikeal Glenn Stine, a federal prisoner proceeding pro se,[2] appeals from the district court's dismissal of his complaint alleging various Eighth Amendment violations, which was brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Mr. Stine also requests leave to proceed *in forma pauperis* ("IFP") on appeal. Exercising jurisdiction under 28 U.S.C. § 1291, we grant Mr. Stine the right to proceed IFP, but nonetheless affirm the district court's order dismissing his complaint.

## I. Factual and Procedural Background

Mr. Stine is a prisoner in the custody of the Federal Bureau of Prisons ("BOP"). On October 13, 2011, he filed a complaint in the U.S. District Court for the District of Colorado, alleging various Eighth Amendment claims under *Bivens*. Mr. Stine's complaint alleges that he was denied the medication "Omeprazole," which he claims is essential to help control his gastroesophageal reflux problems, *see* Aplt. Resp. to Show Cause Order at 3–4, and that, unless given appropriate treatment, he is likely to die because he has a "sliding hiatal hernia" and an egg-sized mass in his chest, both of which have acted to intensify the pain and suffering that goes along with his reflux, *see* Aplt. Opening Br. at 2.

---

[2] We construe Mr. Stine's pro se filings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Van Deelen v. Johnson*, 497 F.3d 1151, 1153 n.1 (10th Cir. 2007).

-2-

However, Mr. Stine has an extensive history of filing frivolous actions in the federal courts. For this reason, the district court in a previous case imposed prospective filing restrictions on any of his future pro se complaints. *See* R. at 183–84 (Dist. Ct. Order of Dismissal, filed Oct. 28, 2011) (referencing *Stine v. Lappin*, No. 07-cv-01839-WYD-KLM, 2009 U.S. Dist. LEXIS 78373 (D. Colo. June 25, 2009)). Moreover, 28 U.S.C. § 1915(g) of the Prison Litigation Reform Act (the "PLRA") provides a statutory "three-strike" rule, whereby a prisoner who has brought three or more civil actions that have been dismissed on the grounds that they are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted" is banned from proceeding in further actions IFP absent a showing of "imminent danger of serious physical injury." Mr. Stine failed to comply with the filing restrictions, and because "[he] has filed more than three actions in a court of the United States while he was incarcerated [i.e., implicating § 1915(g)] . . . that were dismissed as frivolous or for failure to state a claim," the district court dismissed his instant complaint and declined to permit him to proceed IFP. *See* R. at 183–84. The court concluded that he had not adequately made a showing of "imminent danger" because the record indicates that he has access to medications *other than* Omeprazole "for treatment of his acid . . . condition." *Id.* at 185; *see id.* at 186. Moreover, it suggested that he is "able to obtain funds when necessary from third parties" in order to pay the costs of his medication—thus, seemingly diminishing the seriousness of his allegations. *See*

-3-

*id.* at 186.

Subsequently, Mr. Stine filed a motion to reconsider, claiming that the district court erroneously concluded that the alternative medications are *adequate* to control his acid reflux. In addition, he attempted to rebut the district court's conclusion that he in fact had access to sufficient funds to pay for the Omeprazole. The district court denied his motion, concluding (again) that he had not complied with the previously imposed filing restrictions, and that he "fail[ed] to assert specific fact allegations that the provision of [other available reflux medicine]" instead of Omeprazole, would support a claim of "imminent danger" under § 1915(g). *Id.* at 225 (Dist. Ct. Order Den. Mot. to Reconsider, filed Dec. 8, 2011).

On appeal, Mr. Stine makes general allegations concerning prison officials' indifference to his medical condition, and he challenges the district court's conclusions regarding (1) whether he adequately set forth a claim of "imminent danger" under § 1915(g) such that he can proceed IFP, and (2) the implications of his failure to comply with the previously imposed filing restrictions. *See* Aplt. Opening Br. at 2–2B. On November 4, 2011, we filed an order requesting Mr. Stine to show cause as to why he has not prepaid the filing fee on appeal, in light of the fact that he is a "three-striker" under § 1915(g) of the PLRA. He filed a response on November 14, 2011, which avers that he has sufficiently shown that he is in imminent danger. Attendant to the foregoing, Mr. Stine filed an

-4-

application to proceed IFP, and we subsequently issued an order assessing fees in the form of partial payments, pending the resolution of this appeal.

## II. Discussion

Generally, the PLRA "requires all prisoners appealing decisions in civil actions to pay the full amount of the filing fees [up front]." *Strope v. Cummings*, 653 F.3d 1271, 1273 (10th Cir. 2011). Indigent prisoners, however, are exempt from this requirement, and "usually make[] an initial partial payment and then pay[] the remainder of the filing fee in monthly installments." *Id.* But where a prisoner has previously filed three or more "action[s]" or "appeal[s]" in federal court, which resulted in "dismiss[als] on the grounds that [they were] . . . frivolous, malicious, or fail[ed] to state a claim upon which relief may be granted," 28 U.S.C. § 1915(g), the prisoner has "'struck out' from proceeding IFP in a new civil action or appeal." *Strope*, 653 F.3d at 1273 (quoting *Smith v. Veterans Admin.*, 636 F.3d 1306, 1308–09 (10th Cir. 2011)); *see Kinnell v. Graves*, 265 F.3d 1125, 1127 (10th Cir. 2001) ("[T]he three strikes provision of the ifp statute applicable to indigent prisoners[] requires so-called frequent filer prisoners to prepay the entire filing fee before federal courts may consider their civil actions and appeals." (quoting *White v. Colorado*, 157 F.3d 1226, 1232 (10th Cir. 1998)) (internal quotation marks omitted)). "To meet the only exception to the prepayment requirement, a prisoner who has accrued three strikes must make specific, credible allegations of imminent danger[.]" *Hafed v. Fed. Bureau of*

*Prisons*, 635 F.3d 1172, 1176 (10th Cir. 2011) (alteration in original) (quoting *Kinnell*, 265 F.3d at 1127–28) (internal quotation marks omitted). Mr. Stine claims that he meets this requirement. Moreover, he argues that his previous filing restrictions should not be applied to prevent him from proceeding in this case. We address each argument in turn.

### A. Imminent Danger

Allegations in the complaint of "imminent danger" must not be "vague and utterly conclusory." *White*, 157 F.3d at 1231; *see also Davis v. Rice*, 299 F. App'x 834, 835 (10th Cir. 2008) ("In making our determination, we look to the complaint, which we construe liberally and the allegations of which we must accept as true." (quoting *Ibrahim v. District of Columbia*, 463 F.3d 3, 6 (D.C. Cir. 2006)) (internal quotation marks omitted)). Indeed, for a prisoner to state a claim of medical deliberate indifference for purposes of overcoming the PLRA's statutory three-strike hurdle, "he should make a 'specific reference as to which of the defendants may have denied him what medication or treatment for what ailment on what occasion,'" *Hafed*, 635 F.3d at 1180 (quoting *White*, 157 F.3d at 1232), identifying the "general nature of 'the serious physical injury' he asserts is imminent," *White*, 157 F.3d at 1232. However, "[a]llegations of past harm do not suffice; the harm must be imminent or occurring at the time the complaint is filed." *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003).

After reviewing Mr. Stine's complaint, and taking his allegations as true (as we must in this context), *see id.* ("[W]e must accept these claims as true now; they may in fact be bogus[.]"), we conclude that Mr. Stine has set forth adequate averments of imminent injuries that will occur if he is not granted relief (i.e., adequately pleaded imminent danger).[3]  Although Mr. Stine has a history of scurrilous and meritless filings, *see infra* Part II.B, the standard for assessing allegations of "imminent danger" does not necessarily depend on the past conduct of the prisoner, *see generally Ciarpaglini*, 352 F.3d at 330–31; *Gibbs v. Cross*, 160 F.3d 962, 966 (3d Cir. 1998) ("Congress [in enacting the 'three strikes' provision] was clearly concerned with continuing to afford *in forma pauperis* filing status to inmates who had a history suggestive of abusing the judicial system.").

---

[3]  Mr. Stine has submitted three documents (with attached exhibits) to this Court in an effort to underscore the serious nature of his physical condition and to thereby bolster his claim of imminent danger: (1) a request for the Court to consider certain health-related exhibits (docketed Jan. 5, 2012); (2) a request that the Court take judicial notice of certain documents relating to his stomach condition (docketed Feb. 2, 2012); and (3) an expert report of a Dr. Vincent T. Yu (docketed Feb. 24, 2012), which purportedly shows the severity of his injuries. We decline to consider these documents, however, and properly confine our review to the averments of Mr. Stine's complaint.  Furthermore, even if controlling legal principles did not restrict our focus to the complaint's averments, in light of our determination that these averments adequately depict that Mr. Stine faces imminent danger, we would deny Mr. Stine's request to consider these three documents as moot.  We could accord Mr. Stine no more relief on the imminent-danger issue by consideration of the three documents than we already have decided to provide to him.

Mr. Stine claims that his BOP pharmacist has repeatedly refused to fill his prescription for Omeprazole, written by his physician, Dr. Christopher Wilson. Mr. Stine further alleges in his complaint that he needs this medication to control his chronic stomach condition, which, as of late, "caus[es his] throat . . . to bleed and [is] extremely painful." R. at 149 (Pl.'s Compl., filed Oct. 13, 2011) (capitalization altered). He avers that he has been "advised that without the Omeprazole [his previous] ulcers would return and the damage to the lining of [his] esophagus could cause total and permanent loss of [his] ability to talk." *Id.* Mr. Stine seemingly claims that he has *no way* to access this medication (which he claims is the only thing that can control his condition), and that the BOP has been deliberately indifferent to his health problems. *See, e.g.*, Aplt. Opening Br. at 2A ("[T]o save money [the] BOP pharmacist refuses to fill the prescriptions that have been written . . . ." (capitalization altered)); *id.* at 2C ("Unless this Court grants this appeal . . . I will suffer serious injury up to death . . . ." (capitalization altered)).

The district court rejected Mr. Stine's claims, finding that his allegations of imminent danger did not satisfy the requisite showing under 28 U.S.C. § 1915(g) because "[he] has available to him, if he is indigent, Mylanta II/Maalox Plus Liquid," R. at 186 (citing *Stine v. Fed. Bureau of Prisons*, No. 11-cv-00109-WJM-CBS (D. Colo. Sept. 15, 2011) (Inmate Req. for OTC Med. in Pl.'s Mot. for TRO/Prelim. Inj., Dkt. # 222, at *17)), and "does not state that he recently tried

-8-

Mylanta to see if it would help his condition," *id.* However, in his complaint, Mr. Stine clearly averred that other medications did *not* work. *See id.* at 149 ("All other medications have failed." (capitalization altered) (emphasis omitted)). And, he reiterates that claim on appeal. *See* Aplt. Opening Br. at 2A ("Zantac [and] Maalox[] . . . all failed to control the acid . . . ."). We give Mr. Stine the benefit of the doubt both because he is proceeding pro se and in light of the fact that other courts have found similar allegations of the denial of medical accommodations sufficient to satisfy the PLRA's "imminent danger" requirement for proceeding IFP. *See, e.g.*, *Fletcher v. Menard Corr. Ctr.*, 623 F.3d 1171, 1173 (7th Cir. 2010) ("[A]n untreated wound, like an untreated acute illness, could pose an imminent danger of serious physical harm."); *McAlphin v. Toney*, 281 F.3d 709, 710–11 (8th Cir. 2002) (holding that allegations that a prisoner needed tooth extractions to prevent a possible infection were "sufficient as a matter of law" to make a showing of "imminent danger"); *Gibbs*, 160 F.3d at 965–66 (finding the complaint sufficient to satisfy the "imminent danger" standard for a prisoner to proceed IFP where he alleged that, due to a dusty cell, "unidentified dust particles were in his lungs and mucus, and that he is suffering from severe headaches, watery eyes, and a change in his voice as a result"); *see also Smith v. Wang*, 370 F. App'x 377, 378 (4th Cir. 2010) (finding that the plaintiff had "sufficiently established [that] he is in imminent danger of serious physical injury" where his doctor failed to follow up on a previous evaluation that

-9-

suggested he could have a tumor, and where the defendants "expos[ed] him to second-hand cigarette smoke and [did] not provid[e] reasonable medical care to treat his medical issues, such as nose bleeds and headaches, caused by [the] exposure"); *Fuller v. Myers*, 123 F. App'x 365, 367–68 (10th Cir. 2005) (finding a prisoner's assertion "that he currently suffers from breathing difficulties and other respiratory problems, apparently exacerbated by the ventilation system where he is incarcerated," to "facially satisf[y] the threshold requirement of showing that he is in 'imminent danger of serious physical injury' within the meaning of 28 U.S.C. § 1915(g)"); *cf. Brown v. Johnson*, 387 F.3d 1344, 1350 (11th Cir. 2004) (finding a prisoner's amended complaint to adequately allege "imminent danger of serious physical injury" where the prisoner suffered from the human immunodeficiency virus ("HIV") and hepatitis, and his doctor stopped his prescribed treatment, causing him to "suffer[] prolonged skin and newly developed scalp infections, severe pain in the eyes and vision problems, fatigue and prolonged stomach pains"); *Partin v. Harmon*, 113 F. App'x 717, 718 (8th Cir. 2004) (per curiam) ("After careful review of the pleadings, we agree with [the plaintiff] that he sufficiently alleged imminent danger of serious physical injury . . . [where he averred that] he was exposed to raw sewage; denied treatment for tuberculosis, prostate cancer, and colon cancer; deprived of prosthetic support boots; denied medical care for an injured knee and ankle; and forced to work against medical restrictions.").

-10-

Taken in the light most favorable to Mr. Stine, his allegations facially establish that he is suffering from a severe medical condition that necessitates Omeprazole.[4]  Otherwise, he will suffer (in his words) from "refl[u]x[] [of] blood," R. at 150 (capitalization altered), pain when he "eat[s] or talk[s]," *id.*, reduced "ability to . . . swallow" without pain, *id.* at 152, and "permanent damage to [his] . . . esophagus lining," *id.*, all because he is not being provided with necessary medication.[5]  Consequently, we grant his motion to proceed IFP on

[4]     To be sure, this does not necessarily end the duty (or ability) of the district court to test the pro se plaintiff's allegations of "imminent danger" under the PLRA's screening provisions.  For instance, after a district court provisionally grants IFP on the basis of a showing of imminent danger, "the defendants are permitted to mount a facial challenge, based on full development of the facts, to the district court's provisional determination *on the face of the complaint* that [the prisoner] satisfies the 'imminent danger' element."  *Fuller v. Myers*, 123 F. App'x at 368 (emphasis added); *see Taylor v. Watkins*, 623 F.3d 483, 485 (7th Cir. 2010) ("[W]hen a defendant contests a plaintiff's claims of imminent danger, a court must act to resolve the conflict.  A contrary conclusion would mean that a three-strikes plaintiff could proceed IFP whenever his allegations of imminent danger were facially plausible, even if the defendant had incontrovertible proof that rebutted those allegations."); *Fuller v. Wilcox*, 288 F. App'x 509, 511 (10th Cir. 2008) ("If the defendants challenge the factual allegations supporting the imminent danger exception, the district court must then determine whether these allegations are credible.").  Moreover, nothing "prevents a district court from discrediting factual claims of imminent danger that are 'clearly baseless,' i.e., allegations that are fantastic or delusional and rise to the level of the 'irrational or wholly incredible.'"  *Gibbs*, 160 F.3d at 967 (quoting *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)); *see Kinnell*, 265 F.3d at 1127–28 (noting that allegations of "imminent danger" must be "specific" and "credible").

[5]     The district court alternatively concluded that "Mr. Stine was able to obtain funds from a family member to pay the $350.00 filing fee in full in Case No. 11-cv-00109-WJM-CBS."  R. at 186.  Consequently, it found that he "is able to obtain funds when necessary from third parties," diminishing his allegations of

(continued...)

-11-

appeal. We remind Mr. Stine that he is obligated to make periodic payments until

---

[5](...continued)
"imminent danger." *Id.* While it is true, as noted *supra*, that the district court may disregard non-credible allegations in considering whether a pro se prisoner satisfies the "imminent danger" exception, *see Kinnell*, 265 F.3d at 1127–28, we believe, in this instance, that Mr. Stine's complaint facially sets forth the reasons that he cannot pay for his medication. Specifically, he contends that his pharmacist "will not fill [his] prescription" until he "pay[s] off [his outstanding] bills." R. at 150 (capitalization altered). This explanation is not so "fantastic or delusional," *Gibbs*, 160 F.3d at 967, to necessarily rise to the level of the improbable or facially frivolous. Indeed, Mr. Stine avers on appeal that the "BOP immediately takes all [of his] funds" because he owes, *inter alia*, "court fees" and "criminal restitution." Aplt. Opening Br. at 2B (capitalization altered). Moreover, he also claimed below that the only family members he has left—one brother and one half-sister—are both ill with cancer, and therefore presumably cannot pay his fees any longer. *See* R. at 199 (Pl.'s Verified Mot. to Reconsider, filed Nov. 7, 2011). To the extent the district court believed that Mr. Stine's ability to pay for his medication was a fact that undermined the credibility of the assertions in his complaint, it retained the ability to test the veracity of that fact. *See supra* note 4; *see also Hafed*, 635 F.3d at 1179–80 (noting that allegations of imminent danger must be credible); *Taylor*, 623 F.3d at 485 ("[I]t has never been the rule that courts must blindly accept a prisoner's allegations of imminent danger."); *Fuller v. Myers*, 123 F. App'x at 367 ("The district court should still dismiss Fuller's complaint through the screening process if it finds that the complaint is frivolous, malicious, fails to state a claim, or seeks monetary relief against an immune defendant."); *White*, 157 F.3d at 1232 ("Like the district court, we conclude Mr. White has failed to raise a *credible* allegation that he is in imminent danger of serious physical harm . . . ." (emphasis added)). However, absent a record reflecting such further judicial investigation, we are inclined to accept the veracity of Mr. Stine's pro se averments that he cannot pay the costs of filling his Omeprazole prescription because his complaint suggests as much, and nothing in the record materially undermines that conclusion. *See McAlphin*, 281 F.3d at 710 ("We are of course mindful of the rule that the well-pleaded allegations of a complaint must be taken as true before the complaint can be dismissed as insufficient *on its face*." (emphasis added)). Indeed, even if it is true that his family members provided him with the filing fees in a *prior* case, it is not clear that they could or would provide him with *continual* funds to purchase medication for an allegedly chronic condition.

-12-

the full balance of his appellate filing fees are satisfied. *See Fuller v. Myers*, 123

F. App'x at 368 ("We GRANT Fuller leave to proceed IFP in this appeal, subject

to the requirements in § 1915(b) that his custodian make initial and periodic

payments from his prison account when funds exist to do so, until the appellate

and filing fees have been paid.").

## B. Filing Restrictions

Despite the fact that Mr. Stine can proceed IFP, he remains subject to

previously imposed filing restrictions which he does not challenge as invalid.

The district court found that Mr. Stine had not complied with the specific terms of

his previously imposed filing restrictions—entered in *Stine v. Lappin*, No.

07-cv-01839-WYD-KLM, 2009 U.S. Dist. LEXIS 78373, *see* R. at 35–37 (Rec. of

Mag. J. to Grant Defs.' Mot. to Dismiss and Deny Pl.'s Mot. for Inj., filed June

25, 2009)—by, *inter alia*, (1) failing to state in his petition "whether any

defendant to this anticipated lawsuit was a party in any prior lawsuit that he

filed"; (2) "fail[ing] to submit the information he is required to provide regarding

each previous case he has filed"; and (3) failing to include in his accompanying

affidavit "all of the recitals required." R. at 184.

This Court has repeatedly recognized the inherent right of the federal courts

to "regulate the activities of abusive litigants by imposing carefully tailored

restrictions under the appropriate circumstances." *Tripati v. Beaman*, 878 F.2d

351, 352 (10th Cir. 1989) (per curiam) (quoting *Cotner v. Hopkins*, 795 F.2d 900,

902–03 (10th Cir. 1986)) (internal quotation marks omitted); *see, e.g.*, *Ysais v. Richardson*, 603 F.3d 1175, 1180 (10th Cir. 2010) ("Federal courts have the inherent power to regulate the activities of abusive litigants by imposing carefully tailored restrictions under appropriate circumstances."); *Tripati*, 878 F.2d at 352 ("A district court has power under 28 U.S.C. § 1651(a) to enjoin litigants who abuse the court system by harassing their opponents."); *Miles v. Angelone*, 483 F. Supp. 2d 491, 495 n.3 (E.D. Va. 2007) (collecting cases and noting that "[e]very federal circuit to consider this issue has recognized the judicial power to enjoin abusive litigants"); *see also Wolfe v. George*, 486 F.3d 1120, 1125 (9th Cir. 2007) ("[W]e impose prefiling requirements on vexatious appellate litigants in light of decisions upholding their legitimacy."); *Cauthon v. Rogers*, 116 F.3d 1334, 1337 (10th Cir. 1997) ("[The prisoner's] filings have been repetitive, frivolous, and malicious. We therefore impose additional restrictions on his filings in this court, whether or not he pays a full filing fee."); 42 Am. Jur. 2d *Injunctions* § 181, at 772 (2010) ("Although litigiousness alone will not support an injunction restricting a plaintiff's filing activities, the courts have the authority to enjoin persons engaged in the manifest abuse of the judicial process.").

"[A pro se litigant's] right of access to the courts is neither absolute nor unconditional, and there is no constitutional right of access to the courts to prosecute . . . action[s] that [are] frivolous or malicious." *Cauthon*, 116 F.3d at 1337 (quoting *In re Winslow*, 17 F.3d 314, 315 (10th Cir. 1994) (per curiam))

-14-

(internal quotation marks omitted); *see also Tripati*, 878 F.2d at 353 ("No one, rich or poor, is entitled to abuse the judicial process.").  As a general matter, injunctions imposing filing restrictions "are appropriate where (1) the litigant's lengthy and abusive history is set forth; (2) the court provides guidelines as to what the litigant must do to obtain permission to file an action; and (3) the litigant received notice and an opportunity to oppose the court's order before it is instituted."  *Ysais*, 603 F.3d at 1180 (quoting *Tripati*, 878 F.2d at 353–54) (internal quotation marks omitted).  In *Stine v. Lappin*, No. 07-cv-01839-WYD-KLM, 2009 U.S. Dist. LEXIS 78373, the magistrate judge set forth what unquestionably constitutes a comprehensive account of Mr. Stine's prior vexatious and abusive motions and filings.  *See* R. at 9–13, 41–43; *see, e.g.*, *id.* at 9 ("The court received two pleadings from Plaintiff about his erratic mental state and desire to kill people."); *id.* (referencing a "letter from Plaintiff threatening and making scandalous allegations about the Court and defense counsel"); *id.* at 11 (referencing "a letter in an envelope addressed by Plaintiff," which "contained threatening language directed at the Court"); *id.* at 41–43 (detailing other actions and motions filed by Mr. Stine which have been dismissed or denied as frivolous or malicious).  The recommendation regarding the imposition of filing restrictions also clearly set forth detailed guidelines as to *what* Mr. Stine had to do in the future in order to be in compliance with the prospective injunction.  Otherwise, "the reviewing judge shall not . . . address the merits of the complaint."  R. at 37.

-15-

Mr. Stine was given time to file objections to the recommendation, *see id.* at 39, but the district court in *Stine v. Lappin* nonetheless adopted the magistrate judge's recommendation in full and incorporated the injunction, *see id.* at 52 (Dist. Ct. Order Affirm. & Adopting Rec. of Mag. J., filed Sept. 1, 2009) (No. 07-cv-01839-WYD-KLM) ("I . . . agree with Magistrate Judge Mix's Recommendation to impose specific restrictions on the Plaintiff should he wish to file future *pro se* cases in this Court."). In other words, the district court, in originally adopting and issuing the underlying injunction, complied with the three requirements derived from *Tripati* and Mr. Stine has provided no basis for concluding otherwise. *See Penk v. Hickenlooper*, 387 F. App'x 830, 831–32 (10th Cir. 2010) (noting that "[t]he district court dismissed [the plaintiff's] complaint . . . because he failed to comply with [previously imposed filing] restrictions," and because there was no colorable basis to challenge the validity of the injunction, the district court's judgment "must be affirmed").

The injunction generally prevents Mr. Stine from filing a pro se action without setting forth information regarding prior federal lawsuits in which he was a party and providing an affidavit in which he disclaims any intention of abusing the judicial process. It also includes various other administrative restrictions. This injunction is simply not unreasonable in light of Mr. Stine's previous filings, and he does not challenge its validity per se. Indeed, he has good reason not to; we have consistently approved and imposed analogous filing restrictions on the

-16-

basis of conduct much less abusive than his.[6]  *See, e.g.*, *Ysais*, 603 F.3d at 1181

_____

[6]  Mr. Stine does suggest in a vague and conclusory fashion that the magistrate judge who previously recommended the underlying sanctions in *Stine v. Lappin* relied on facts given by untruthful witnesses, apparently undermining the factual basis of the injunction.  At the outset, we note that these vague averments are not framed as a cognizable argument, and ordinarily that would be sufficient for this Court to disregard them.  *See, e.g.*, *Burrell v. Armijo*, 603 F.3d 825, 835 (10th Cir. 2010) ("[O]n appeal, issues nominally raised but inadequately briefed need not be considered." (citing *United States v. Kunzman*, 54 F.3d 1522, 1534 (10th Cir. 1995))).  In any event, assuming *arguendo* that these allegations amounted to a cognizable challenge to the injunction, Mr. Stine would still face an insurmountable procedural hurdle.  The findings of the district court in *Stine v. Lappin* may not be collaterally attacked in this proceeding.  *See Roberts v. United States*, 141 F.3d 1468, 1471 (11th Cir. 1998) ("Roberts may not now collaterally attack the injunctions issued by the court in the criminal forfeiture case by filing a separate civil suit."); *Sterling v. United States*, 85 F.3d 1225, 1230 (7th Cir. 1996) (Flaum, J., concurring) ("A litigant may not collaterally attack a prior judgment by simply arguing that it is incorrect."); *United States v. Yacoubian*, 24 F.3d 1, 5 (9th Cir. 1994) (noting that a government agency could not challenge the finding in a prior order by "collaterally attack[ing] that finding . . . [in] challenging the contempt order issued to enforce it"); *cf. Celotex Corp. v. Edwards*, 514 U.S. 300, 301–02, 313 (1995) ("Respondents chose . . . to collaterally attack the [Florida] Bankruptcy Court's . . . [i]njunction in the federal courts in Texas.  This they cannot be permitted to do without seriously undercutting the orderly process of the law."); *Alley v. U.S. Dep't Health and Human Servs.*, 590 F.3d 1195, 1203 (11th Cir. 2009) ("[A]n injunction issued by one court against the disclosure of information may not be collaterally attacked in another court in a FOIA lawsuit seeking disclosure of that information.").  Furthermore, even if it were appropriate to consider such an attack, construing Mr. Stine's averments with maximum liberality, we simply cannot conclude that they explain how the magistrate judge based her recommendation on anything but credible and substantial evidence regarding Mr. Stine's "threaten[ing] and harass[ing]" conduct, his "fail[ure] to comply with . . . Court Orders," and his "malicious[]" use of the court's process.  R. at 28.  *All* of the foregoing examples of his conduct constituted the basis for the injunction, and Mr. Stine offers absolutely nothing credible indicating that the magistrate judge was incorrect in relying on them, or that we should otherwise be counseled toward a different conclusion in this appeal.

-17-

(imposing "limited restrictions" upon the appellant "with respect to further pro se filings with th[e] court" including, *inter alia*, a requirement that he provide "[a] list of all appeals or original proceedings filed concerning [the same subject matter,] . . . [a] notarized affidavit, . . . which recites the issues he seeks to present . . . [and an assertion] that the legal arguments being raised are not frivolous or made in bad faith"); *Cauthon*, 116 F.3d at 1337 (imposing restrictions, where the plaintiff's previous filings were "repetitive, frivolous, and malicious," including the requirement that he "[f]ile a petition with the clerk of th[e] court requesting leave to file a pro se action[,] . . . [and list] all lawsuits currently pending or previously filed with th[e] court, including the name, case number, and citation if applicable"); *Ketchum v. Cruz*, 775 F. Supp. 1399, 1406–07 (D. Colo. 1991) (setting forth filing restrictions including the requirement that further pro se complaints include a petition setting forth "a list of all lawsuits in the United States District Court for the District of Colorado, the [Tenth Circuit], the United States Supreme Court, and state courts in which [the plaintiff] was or is a party[, and] the name and citation of each case"), *aff'd* 961 F.2d 916, 921 (10th Cir. 1992) (approving the foregoing restrictions because they "permit[] . . . access to the court when represented by an attorney admitted to practice both in Colorado and before the district court and spell[] out with precision and clarity how plaintiff can obtain leave to file actions pro se, should he desire to do so").  Nor does he seriously challenge the district court's

conclusion that he is in violation of the filing restrictions, or the legal propriety of its *sua sponte* dismissal of his complaint on that basis. *Cf. Greenlee v. U.S. Postal Serv.*, 351 F. App'x 263, 265–66 (10th Cir. 2009) (noting the district court's *sua sponte* dismissal of a pro se plaintiff's complaint, and finding that "he present[ed] no argument of error in the district court's conclusion that he failed to comply with the restrictions in filing his . . . complaint").

But while Mr. Stine does not challenge the validity of the underlying injunction, he suggests "that [it] is totally impossible for [him] to comply" with it because the "BOP immediately takes all funds sent to [him] because [he owes a substantial amount in prior court fees and restitution]," Aplt. Opening Br. at 2B (capitalization altered), and the sheer expense of obtaining the required information from his previous court filings would be prohibitive in his endeavor to file future lawsuits, *see* Aplt. Supp. to Opening Br. at 2. The district court noted, in denying Mr. Stine's motion to reconsider—which raised the issue of his financial constraints—that "the Court is not responsible for Mr. Stine's inability to comply with the restrictions," R. at 224, and nothing in this case counsels the application of a waiver, *id.* at 225. We agree for two salient reasons.

First, to the extent that Mr. Stine is challenging the terms or scope of the injunction, he cannot prevail on that claim here. *See supra* note 6. A previously imposed injunction generally may not be collaterally attacked at the time of its enforcement. *See, e.g.*, *Schildhaus v. Moe*, 335 F.2d 529, 530 (2d Cir. 1964)

-19-

(Friendly, J.) ("The injunction, whether right or wrong, is not subject to impeachment in its application to the conditions that existed at its making." (quoting *United States v. Swift & Co.*, 286 U.S. 106, 119 (1932)) (internal quotation marks omitted)); *cf. Langton v. Hogan*, 71 F.3d 930, 935 (1st Cir. 1995) ("A judgment that is entered with prejudice under the terms of a settlement, whether by stipulated dismissal, a consent judgment, or a confession of judgment, is not subject to collateral attack by a party or a person in privity, and it bars a second suit on the same claim or cause of action."); *V.T.A., Inc. v. Airco, Inc.*, 597 F.2d 220, 224 (10th Cir. 1979) ("A judgment is not void merely because it is or may be erroneous."); *SEC v. Bilzerian*, --- F. Supp. 2d ----, 2011 WL 4537891, at *3 (D.D.C. Oct. 3, 2011) ("[The defendant] cannot, almost a decade later, challenge the July 19 Injunction on grounds that he could have raised at the time of his first appeal but chose not to do so then, nor can he raise the same challenge that he raised in his first appeal that was previously rejected by the Court of Appeals.").[7]

---

[7] The Federal Rules of Civil Procedure, however, do provide Mr. Stine with a procedural mechanism to seek modification (or even dissolution) of the injunction, but he must implement it *before the court that originally issued the injunction.  See* Fed. R. Civ. P. 60(b)(5) (noting that "the court may relieve a party . . . from a final judgment[ or] order[ where] . . . applying it prospectively is no longer equitable"); *see also* 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2961, at 391–94 (2d ed. 1995) ("Th[e] continuing responsibility of the *issuing court* over its decrees is a necessary concomitant of the prospective operation of equitable relief. . . . [A]

(continued...)

-20-

And, second, we are confident in the ability of the district court to apply the injunction equitably, considering the individual circumstances of Mr. Stine. Indeed, even in light of Mr. Stine's continual frivolous and harassing litigation that quite understandably has tested the patience of the federal courts, the district court has repeatedly and thoughtfully considered his claims. *See, e.g.*, *Stine v. Allred*, No. 11-cv-00109-WMJ-CBS, 2011 U.S. Dist. LEXIS 98289, at *12–15, 48–49 (D. Colo. Aug. 25, 2011) (considering Mr. Stine's request for injunctive relief on the grounds that he has not received adequate dental care); *Stine v. Fed. Bureau of Prisons*, No. 10-cv-01652-BNB, 2010 U.S. Dist. LEXIS 93573, at *2–3 (D. Colo. Aug. 17, 2010) ("Although Mr. Stine is subject to . . . filing restrictions . . . , the Court directed . . . the warden where Mr. Stine currently is housed[] to provide a statement to the Court addressing the current provisions being made to assure that Mr. Stine is not in imminent danger of serious physical harm . . . ."); *Stine v. Davis*, No. 10- 2010 U.S. Dist. LEXIS 89065, at *3–4 (D. Colo. July 28, 2010) (considering Mr. Stine's claims alleging "inadequate" clothing).

Moreover, the injunction plainly permits the district court, in considering

---

[7](...continued)
court must never ignore significant changes in the law or circumstances underlying an injunction . . . ." (emphasis added) (footnote omitted)). Of course, it must be emphasized that "modification is not a means by which a losing litigant can attack the court's decree collaterally." 11A Wright, Miller & Kane, *supra* § 2961, at 394 (citing cases and noting that "the availability of modification is not a substitute for a direct appeal from a judgment").

whether to allow Mr. Stine to proceed, to inquire into "whether the complaint is frivolous," and it suggests that strict non-compliance with the administrative restrictions—i.e., a technicality—would not necessarily operate to bar a legitimate future claim. *See* R. at 37 (noting only that the "failure to comply with the procedures and principles mandated by the injunction *shall be sufficient grounds* for denying the petition"). Thus, after a thorough review of the record, we cannot say that the district court's application of the filing restrictions—in dismissing Mr. Stine's complaint without prejudice—in this case resulted in inequity, or that it otherwise constitutes an abuse of discretion. *Cf. ClearOne Commc'ns, Inc. v. Bowers*, 651 F.3d 1200, 1210 (10th Cir. 2011) ("We review a district court's determination of civil contempt for abuse of discretion." (quoting *United States v. Ford*, 514 F.3d 1047, 1051 (10th Cir. 2008)) (internal quotation marks omitted)); *Penk*, 387 F. App'x at 831 ("We review the district court's decision to issue such an injunction for abuse of discretion . . . ."); *Tripati*, 878 F.2d at 354 ("We emphasize that the district court's discretion in tailoring appropriate conditions under which [the plaintiff] may commence and prosecute future lawsuits is extremely broad and that we will not disturb that court's choice of requirements absent abuse of that discretion."). For that reason, the district court's decision should be upheld.

### III. Conclusion

For the reasons set forth above, we **GRANT** Mr. Stine's request to proceed

IFP on appeal. *See DeBardeleben v. Quinlan*, 937 F.2d 502, 505 (10th Cir. 1991). However, we **AFFIRM** the district court's order dismissing his complaint *without prejudice*. Despite the fact that Mr. Stine may proceed without prepayment of costs, he is reminded that he is obligated to make partial payments consistent with this Order.[8]

Entered for the Court

JEROME A. HOLMES
Circuit Judge

---

[8] We deny Mr. Stine's motion to expedite the case (as well as his repeated requests to the same effect in other filings) as moot.