**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 12, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT
_____

PATRICK C. LYNN,

    Plaintiff - Appellant,

v.

CHARLIE WILLNAUER; MARY
YOAKUM; TONI SINCLAIR; MELISSA
DOE; RAJWINDER KAUR; ALEYCIA
MCCULLOUGH; DAWN SILER;
MICHELE LAYTON; MILLIE
MURRAY-TRINGALE; LAURA DOE;
SEAN POTTER; CHANTEL ABEL;
CHASATIE WISDOM; JANICE
GUNTER; JORDAN MADORIN; RALK
SALKE; LACY OSMON; BARRY
LEWIS HARRIS; GERARD HERROD;
DAVID TATARSKY; CORIZON
HEALTH SERVICES; KANSAS
DEPARTMENT OF CORRECTIONS,

    Defendants - Appellees.

Nos. 19-3166 & 19-3185
(D.C. No. 5:19-CV-03117-JAR)
(D. Kan.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **BRISCOE**, **MATHESON**, and **CARSON**, Circuit Judges.
_____

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Patrick Lynn, a pro se Kansas prisoner, filed these consolidated appeals from (1) the denial of his motions to waive the district court filing fee due to imminent danger of serious physical injury and to proceed *in forma pauperis* (IFP) (No. 19-3166) and (2) the subsequent dismissal of his 42 U.S.C. § 1983 action for failure to pay the filing fee (No. 19-3185). Lynn has accrued three "strikes" under 28 U.S.C. § 1915(g), because he has, on three or more prior occasions, had an action or appeal dismissed as frivolous, malicious, or for failure to state a claim. He is therefore prohibited from proceeding without prepayment of the filing fee unless he shows an imminent danger of serious physical injury. *See id.* The district court denied Lynn's motions to waive the filing fee and proceed IFP, concluding he failed to show he is in imminent danger. The court then dismissed the action when he failed to pay the fee. We have jurisdiction under 28 U.S.C. § 1291, and we reverse the district court's judgment and remand for further proceedings.

I

Lynn filed this action, alleging defendants[1] violated his Eighth Amendment rights by denying him adequate medical care, including medication and emergency transport services to the hospital for tests and monitoring. He alleges he has had multiple cardiac events following quadruple bypass surgery in 2014, which have required repeated hospitalizations. His claims are premised in part on cardiac tests that measure his blood troponin levels as a diagnostic marker of a potential heart attack. According to Lynn, in August 2018, his baseline troponin level was determined to be .002. In January and

---

[1] Defendants were not served in the district court, and there are no appellees in these appeals.

March 2019, he had two cardiac events while confined at the Hutchinson Correctional Facility. His troponin level during the January 2019 event was .116, and although Lynn could not recall his March 2019 troponin level, in both instances, he was transported to the hospital and admitted for several days based on his elevated troponin levels.

In May 2019, Lynn was transferred to the Lansing Correctional Facility (LCF), where he suffered another cardiac event. On May 25, 2019, Lynn was taken to the LCF infirmary but defendants RN Melissa Doe and LPN Toni Sinclair initially denied him the "mandatory . . . [chest pain] protocol," which consists of administering two aspirin, taking his blood pressure, performing an EKG, and starting an IV. R. at 10 (internal quotation marks omitted). He eventually received the protocol, and an on-call physician, Dr. Monir, ordered Lynn transported to the hospital based on an elevated troponin level of .116. Then, on June 22, 2019, Lynn suffered symptoms of a heart attack. Dr. Monir ordered a troponin test, which yielded a level of .135, prompting Dr. Monir to send Lynn to the University of Kansas (KU) Medical Center, where he was admitted for several days.

When Lynn returned to LCF on June 25, 2019, he was admitted to the infirmary because he suffered "another [chest pain] medical emergency." *Id.* at 11. Medical staff followed the chest pain protocol and determined his troponin level was .116. Advanced Practice Registered Nurse (APRN) Rajwinder Kaur and Corizon Medical Director Dr. Barry Lewis Harris also ordered 12-hour blood draws to monitor his troponin levels, which was next measured at .117. But APRN Kaur and Dr. Harris denied Lynn any pain medication, despite "awfully painful heart spasms" that continued the next day. *Id.*

3

On June 26, while still experiencing chest pain, Lynn was discharged from the infirmary only to be readmitted later that day with "another [chest pain] emergency." *Id.* His troponin level was .127, but Dr. Harris and Dr. Charlie Willnauer again denied him pain medication and refused to transport him to the hospital.

Then on June 27, Lynn asked RN Laura Doe to speak with Health Services Administrator (HSA) Aleycia McCullough, LCF Director of Nursing Michele Layton, Dr. Willnauer, Nurse Practitioner Millie Murray-Tringale, APRN Kaur, and Dr. Harris, but his requests were ignored, prompting Lynn to demand to be taken to the hospital for treatment or to be allowed to contact his family or a lawyer. These requests were ignored as well, and both Dr. Harris and Dr. Willnauer refused to send Lynn to the hospital or to administer any pain medication, despite "ongoing awful heart spasm[] pain." *Id.* Lynn's troponin level was .124, but RN Mary Yoakum told him that Dr. Harris refused to allow him to be "taken to a hospital because it cost too much money to keep sending [him]." *Id.* Lynn also learned on July 5, 2019, that LPN Brandy Cobb cancelled all his medications that he was to keep on his person.

Based on these allegations, Lynn claimed defendants were violating his Eighth Amendment rights by refusing to authorize him pain medication and emergency transportation services to the hospital for treatment of his deteriorating heart condition, as evidenced by his elevated troponin levels. He claimed the denial of pain medication and emergency transportation to the hospital, as well as the lengthy periods of time it took to send couriers to nearby labs to retrieve the results of his blood work, exposed him to an imminent danger of suffering a heart attack or stroke. He also asserted claims for

4

medical malpractice and criminal mistreatment under state law. Lynn relied on the same allegations in moving the district court to permit him to proceed IFP, arguing he was in imminent danger of serious physical injury.

The district court denied Lynn's motions, concluding that he is a three-strikes litigant who failed to show he was in imminent danger of serious physical harm, and was therefore required to pay the filing fee under § 1915(g). The court reasoned that Lynn's allegations that he underwent quadruple bypass surgery and required ongoing testing and monitoring did not demonstrate he was in imminent danger, but, rather, reflected his disagreement with the adequacy of the treatment he was receiving and the amount of testing and monitoring necessary for his heart condition. When Lynn subsequently failed to pay the filing fee, the district court dismissed his complaint. These appeals followed.

Given Lynn's status as a three-strikes litigant, we directed him to show cause why he should not be required to pay the full appellate filing fee. In response, he reiterated he is in imminent danger because he has a serious heart condition and has been denied medication and treatment. He also moved to proceed IFP on appeal.

II

To fall within the exception of 28 U.S.C. § 1915(g)'s three-strikes rule, a prisoner must "make specific, credible allegations of imminent danger of serious physical harm." *Hafed v. Fed. Bureau of Prisons*, 635 F.3d 1172, 1179 (10th Cir. 2011) (brackets and internal quotation marks omitted), *abrogated on other grounds by Coleman v. Tollefson*, 575 U.S. 532 (2015). "[H]e should make a 'specific reference as to which of the defendants may have denied him what medication or

5

treatment for what ailment on what occasion.'" *Id.* at 1180 (quoting *White v. Colorado*, 157 F.3d 1226, 1232 (10th Cir. 1998)). "Allegations of past harm do not suffice; the harm must be imminent or occurring at the time the complaint is filed." *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003). We accept the allegations as true, *see id.*, and evaluate whether they facially satisfy the imminent-harm requirement, *see White*, 157 F.3d at 1232.

Lynn's allegations satisfy these requirements. He alleges he is in imminent danger of serious physical injury because he has been denied medication for chest pain and could suffer a heart attack or stroke at any time, yet defendants refuse to send him to the hospital for treatment. Regarding the denial of pain medication, he specifically alleges that after returning to LCF from KU Medical Center on June 25, 2019, he experienced chest pain and was taken to the LCF infirmary, where APRN Kaur and Dr. Harris denied him pain medication despite his pain and elevated troponin levels. He says the next day, June 26, he was discharged only to be readmitted to the infirmary later that same day with "awfully painful heart spasms," but Dr. Willnauer and Dr. Harris again denied him pain medication. R. at 11. He also alleged that LPN Cobb cancelled all his "keep-on-person" medications.

As for refusing to send him to the hospital, Lynn alleges that his baseline troponin level is .002 and that Dr. Monir sent him to the hospital twice due to elevated troponin levels, first on May 25, 2019, because his troponin level was .116 and then again on June 22, 2019, because his troponin level was .135. But he alleges that on June 26, Dr. Willnauer and Dr. Harris refused to send him to the hospital,

6

despite a troponin level of .127. Then, on June 27, Lynn demanded to go to the hospital, but Dr. Willnauer and Dr. Harris still refused send him, even though his troponin level was .124.

These allegations specify when each defendant denied Lynn pain medication, his "keep-on-person" medication, and treatment at the hospital for his heart condition. And given the frequency of his "cardiac events," *id.* at 9, it is reasonable to infer that the harm is occurring or imminent. Consequently, Lynn sufficiently pleaded facts to fall within the imminent-danger exception to the three-strikes rule of § 1915(g). The district court concluded otherwise, noting he had undergone bypass surgery, he had access to several nitro tablets when drafting his complaint, he was repeatedly hospitalized, and he was scheduled for additional surgeries. But these circumstances are not the sources of, and do not detract from, his claims of imminent harm from the denial of medication and treatment on other occasions. Moreover, relying heavily on out-of-circuit district court cases, the court concluded that Lynn's dispute with the adequacy of his treatment cannot establish an imminent danger of harm. *See* Supp. R. at 9-12. That conclusion, however, is not consistent with our cases, including several unpublished cases that are particularly instructive.[2]

For example, in *Boles v. Colorado Department of Corrections*, an inmate alleged he was in imminent danger from irritable bowel syndrome (IBS), which was

---

[2] Unpublished cases are not binding precedent, but we may consider them for their persuasive value. *See* Fed. R. App. 32.1(a); 10th Cir. R. 32.1(A); *see also United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).

treated with a fresh-food diet, and that the defendants were denying him this standard treatment (a fresh-food diet), causing him to suffer "excruciating pain," "aggravation of a degenerative bone condition[,] and swelling in his legs."  794 F. App'x 767, 770-71 (10th Cir. 2019) (internal quotation marks omitted).  Notwithstanding one defendant doctor's efforts to provide an alternative treatment—fiber supplements— we concluded that the allegations were sufficient to allege an imminent danger, noting, "[W]e have regularly held that specific allegations . . . of prison officials refusing to treat a prisoner's chronic condition that causes severe pain or aggravates debilitating symptoms are enough to facially satisfy the imminent-danger exception," *id.* at 771.  We explained that the inmate specified which defendants denied him what treatment for what ailment on what occasion, resulting in imminent physical injury.  *See id.*  We further explained that the inmate established a nexus between the harm that he alleged would result from the inadequate treatment of his IBS and the defendants' unlawful deliberate indifference to his condition.  *See id.* at 771-72.

We reached a similar conclusion in *Davis v. GEO Group Corrections, Inc.*, 696 F. App'x 851, 852 (10th Cir. 2017), where an inmate alleged he was in imminent danger because he had been denied adequate treatment for severe back pain and a plantar wart, and because he had been denied footwear with a proper arch support.  He alleged his pain immobilized him for days at a time and restricted his daily activities; he also alleged his back pain was exacerbated by the lack of proper arch support.  *See id.*  Although a doctor gave him steroid injections (prednisone), both the doctor and a medical supervisor refused to refer the inmate to an outside

8

specialist for an MRI. *See id.* Additionally, the inmate was given arch support insoles, but the insoles were too small for his shoes, and he was denied orthopedic shoes. *See id.* Later, a new doctor prescribed a psychotropic medication (trazadone) after diagnosing the inmate with "lumbar and cervical degenerative disk disease with probable spinal stenosis and radiculopathy," but defendants still refused to refer the inmate to an outside specialist. *Id.* at 853 (internal quotation marks omitted). Notwithstanding the treatment the inmate did receive, we concluded that he alleged an imminent danger of serious physical harm. *See id.* at 854. We reasoned that the inmate identified the general nature of the serious physical injury that was imminent: chronic and severe back pain that immobilized him for long periods of time and an inability to sleep on his side without his limbs going numb. *Id.* at 854-55. He also identified the defendants who denied him treatment for his condition and when. *Id.* at 855. Recognizing that defendants "may have been responsive to" the inmate's needs, we nonetheless noted that the doctor told him that prednisone was bad for him and trazadone only provided mind and mood-altering affects. *Id.* Also, we observed that, notwithstanding the treatment the inmate did receive, he alleged that his treatment was inadequate because defendants refused to refer him to an outside specialist to obtain an MRI to better understand his condition. *See id.* We concluded that these allegations sufficed to establish an imminent and serious danger. *Id.*

Last, in *Stine v. Federal Bureau of Prisons*, 465 F. App'x 790, 791 (10th Cir. 2012), an inmate alleged he was in imminent danger because he was denied a specific

9

medication, Omerprazole, for acid reflux. He alleged he might die because he had a hernia and a mass in his chest that intensified his pain and suffering from the acid reflux. *See id.* Although the district court noted that alternative medications were available, the inmate asserted those alternative medications did not control his acid reflux. *See id.* at 791-92. We concluded that, despite the inmate's "extensive history" of bringing frivolous lawsuits, *id.* at 791, he alleged he was in imminent danger, *id.* at 793. We reasoned that the inmate was prescribed Omerprazole, but the prison pharmacist refused to fill the prescription, and as a result, the inmate experienced extreme pain and bleeding in his throat. *Id.* We also noted his allegations that without Omerprazole, the inmate's ulcers would return, his esophagus would be damaged, and he would lose the ability to talk. *Id.* We explained that although other medications (Mylanta II and Maalox Plus Liquid) might have been available to the inmate, he alleged they did not work to control his acid reflux. *Id.* at 794. We also recognized "that other courts have found similar allegations of the denial of medical accommodations sufficient to satisfy the . . . 'imminent danger' requirement." *Id.*

In each of these three cases, we concluded that the inmate alleged an imminent danger of serious physical injury, notwithstanding the inmate's disagreement with the adequacy of his treatment. Indeed, despite the fiber supplements in *Boles*; the prednisone, trazadone, and small shoe inserts in *Davis*; and the Maalox and Mylanta in *Stine*, we concluded that the failure to provide adequate treatment sufficiently alleged an imminent danger. Lynn alleges that he was denied pain and

10

keep-on-person medication, despite "awfully painful heart spasms." R. at 11. He also alleges he was denied transportation to the hospital for treatment of an imminent heart attack or stroke when his troponin levels were elevated, as he was when Dr. Monir detected his elevated troponin levels. While Lynn's disagreement with the adequacy of his treatment will be relevant to the merits of his claims, at this point, he has sufficiently alleged an imminent danger of serious physical injury. *See, e.g., Ciarpaglini*, 352 F.3d at 331 (concluding that denial of medication for ADHD, panic disorder, and bipolar disorder alleged imminent harm, but allegations that inmate had been seen by doctors ten times in three months reflected disagreement with course of treatment, which failed to state a deliberate indifference claim); *see also* 1 Mary P. Squiers, *Moore's Federal Practice* § 4.40 (2019) ("[T]he 'imminent danger' inquiry should not be a vehicle for determining the merits of the claim.").[3]

### III

Accordingly, we vacate the district court's order denying Lynn's motions to waive the filing fee due to an imminent danger of serious physical injury and to proceed IFP. We also vacate the dismissal of Lynn's action and remand to the district court for consideration of his claims in the first instance. We express no opinion on the merits of those claims. Finally, we grant Lynn's motion to proceed on appeal without prepayment of the appellate filing fee and remind Lynn of his

---

[3] We decline to consider the merits of Lynn's claims in the first instance and remand to allow the district court to do so. Of course, the district court must address Lynn's state-law claims as well.

11

obligation to continue making partial payments toward the appellate filing fee until it is paid in full.

Entered for the Court


Mary Beck Briscoe
Circuit Judge